**PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Phoenix John VINCENT, formerly known as Mark Vincent Leidal, Defendant-Appellee.**

**No. 81SA111.**

Supreme Court of Colorado.

May 18, 1981.

---

Terrance Farina, Dist. Atty., Stephen K. Erkenbrack, Deputy Dist. Atty., Grand Junction, for plaintiff-appellant.

Traylor, Palo, Cowan & Arnold, Peter R. Black, Grand Junction, for defendant-appellee.

ERICKSON, Justice.

Pursuant to C.A.R. 4.1, the prosecution has appealed an order suppressing evidence and foreclosing the use of the defendant's criminal record as derivative evidence or fruit of the poisonous tree. We reverse and remand with directions.

The defendant was arrested and charged with unlawfully carrying a concealed weapon (firearm). Section 18–12–105(1)(b), C.R.S.1973, (1978 Repl.Vol. 8). The loaded .22 caliber revolver recovered from the defendant, with its telltale serial number, led to the discovery of the defendant's true identity and his prior convictions for burglary in Jefferson County, Colorado. The concealed weapon charge was dismissed, and the defendant was charged with possession of a weapon by a previous offender. Section 18–12–108, C.R.S.1973 (1978 Repl.Vol. 8).

The defendant filed a motion to suppress the revolver and the evidence of his prior convictions on the theory that the police did not have probable cause for his arrest because the pistol was not totally concealed. The prosecution and the defense stipulated that the defendant's true identity and his previous convictions for burglary would not

have been discovered if it had not been for the defendant's arrest and the seizure of the revolver. The district court granted the motion to suppress both the revolver and the record of the defendant's prior convictions. The court found that the revolver which was taken from the defendant was not concealed, and that the arrest, therefore, was invalid. The court also concluded that the defendant's previous convictions were derivative evidence and constituted fruit of the poisonous tree which necessarily had to be suppressed.

The undisputed facts require reversal. The defendant, Phoenix John Vincent, who was formerly known as Mark Vincent Leidal, entered the Eastgate Music Center in Grand Junction and made an inquiry about purchasing a flute. Dan Kelly, who was the owner of the store, was also a reserve police officer and had extensive training in the use of firearms. He saw what he believed to be the handle of a derringer protruding from the waistband of the defendant's trousers. He was concerned about his own safety and went to a back room of the store and called the police. When he returned, the defendant told Kelly that he would think about the purchase, and left with his female companion. The defendant then went to the Appleseed Health Store which was next door. Kelly made another call to the police to inform them that the defendant was at the health store.

Officer Birdsill was dispatched to investigate Kelly's report. Upon arrival, he received a second report that the defendant had gone to the health food store, and that the suspects were wearing tan shirts, and that the woman was wearing a floppy hat. Birdsill went into the health food store and saw the individuals who matched the description given by the dispatcher. He approached the defendant from the rear and told him to place his hand on a shopping cart which was in front of him. He said that he was investigating a report that the defendant was carrying a concealed weapon, and then commenced a pat-down search of the defendant. The defendant admitted that he had a gun in his waistband. Birdsill reached around the defendant to extract

the firearm from the waistband of the defendant's trousers. He then handcuffed the defendant and placed him under arrest for carrying a concealed weapon. Section 18–12–105(1)(b), C.R.S.1973.

█ In our view, the stop and frisk and the subsequent arrest did not violate the Fourth Amendment. *U.S.Const.* Amend. IV. *See also, Colo.Const.* Art. II, Sec. 7.

In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the United States Supreme Court reviewed a similar fact situation. Williams was convicted for illegal possession of a handgun which was seized in the course of a "stop and frisk," and was also convicted of possession of heroin which was found when he was fully searched incident to his arrest for possession of the weapon.

Acting on an informant's tip that Williams was carrying narcotics and had a pistol in his waistband, a police officer approached Williams' car. The officer tapped on the window and asked Williams to open the door. Williams responded by rolling down his window. The officer reached into the car and removed a fully loaded revolver from Williams' waistband. The pistol had not been visible to the officer from outside the car, but it was in precisely the place indicated by the informant. Williams was placed under arrest for unlawful possession of the pistol. A search incident to the arrest uncovered substantial quantities of heroin.

Williams contended that the officer's action in seizing the pistol was unreasonable under the standards set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because the informant's tip was uncorroborated. The Supreme Court rejected Williams' claim and concluded that the tip from the informant had enough indicia of reliability to justify the officer's forcible stop and protective seizure of the weapon. The fact that the officer did not observe the weapon himself prior to its seizure was immaterial.

Quoting from *Terry v. Ohio, supra,* the court declared:

" 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. 392 U.S., at 24. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Id.,* at 30. *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923.

We followed the rationale of *Terry v. Ohio, supra,* in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). *See also, People v. Navran,* 174 Colo. 222, 483 P.2d 228 (1971).

In this case, Officer Birdsill made the decision to stop and frisk the defendant on the basis of information supplied by a citizen informant. *See, People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971). The essence of the information provided by the informant, who was a reserve officer, indicated that the defendant had a firearm, and thus was a potential danger to both the officer and the public. Under these circumstances, the frisk was reasonable and did not violate the defendant's right under the Fourth Amendment. *Adams v. Williams, supra.*

█ When Birdsill subsequently discovered the weapon in precisely the place where the informant indicated, he had probable cause to arrest the defendant for carrying a concealed weapon. Probable cause for an arrest without a warrant exists where the facts available to a reasonably cautious officer at the moment of the arrest warrant his belief that an offense had been or is being committed. *People v. Navran, supra.* Probable cause to arrest does not

turn upon whether the defendant is in fact guilty of the offense which brought about his arrest. The trial court erred in concluding that the arrest was not supported by probable cause merely because, in the trial court's opinion, the weapon was not in fact concealed. The question of whether a weapon is concealed is a question of fact for the jury which should not be summarily determined by the trial judge at the time that he rules on the defendant's motion to suppress. *DeHerrera v. People,* 160 Colo. 96, 413 P.2d 900 (1966); *Pueblo v. Sanders,* 151 Colo. 216, 376 P.2d 996 (1962); *McCray v. Denver,* 144 Colo. 1, 354 P.2d 585 (1960).

Accordingly, we reverse the trial judge's order suppressing the firearm seized from the defendant and his order declaring that the defendant's prior convictions are fruit of the poisonous tree. The cause is remanded to the district court for further proceedings consistent with this opinion.