The PEOPLE of the State of
Colorado, Petitioner,

v.

JUVENILE COURT, CITY AND COUN-
TY OF DENVER, and One of the
Judges thereof, Dana Wakefield, Re-
spondents.

No. 91SA73.

Supreme Court of Colorado,
En Banc.

June 3, 1991.

As Modified on Denial of Rehearing
June 24, 1991.

Norman S. Early, Jr., Dist. Atty., Martin
F. Egelhoff, Deputy Dist. Atty., Denver,
for petitioner.

Harry G. Titcombe, Jr., P.C., Harry G.
Titcombe, Jr., Denver, for Howard Paul
Close.

Berkley Rasband, Lakewood, for juvenile
D.N.

Justice VOLLACK delivered the Opinion of the Court.

The People petition this court under C.A.R. 21 for a rule to show cause why the juvenile court should not be required to reinstate the original charges of attempted first degree murder against the defendants, Howard Paul Close and D.N. (defendants). We now make the rule absolute.

I.

The defendants were under the age of eighteen years at the time of their arrest. The juvenile court had exclusive original jurisdiction in the proceedings covering the criminal acts of the defendants. § 19–1–104, 8B C.R.S. (1990 Supp.). The district attorney filed a petition in delinquency pursuant to section 19–2–305, 8B C.R.S. (1990 Supp.),[1] charging the defendants as juveniles with multiple counts of criminal mischief,[2] first degree criminal trespass,[3] aggravated robbery,[4] attempted aggravated robbery,[5] second degree assault,[6] ethnic intimidation,[7] and attempted first degree murder.[8] The People filed a motion pursuant to section 19–2–806, 8B C.R.S. (1990 Supp.), requesting that the juvenile court waive its original jurisdiction over the defendants and transfer the cases to the Denver District Court, where the defendants would be tried as adults. A

transfer hearing[9] was held on November 28, 1990, to determine whether probable cause had been established with respect to the charges filed against the defendants and whether jurisdiction of the defendants should be transferred to the district court.

The People presented seven witnesses at the hearing. The evidence established that on the evening of October 6, 1990, approximately twenty Japanese students gathered at Dartmouth Park to celebrate Keizo Shibusawa's birthday. The celebration continued until approximately 1:30 a.m., when only six students remained in the park. At that time, the students were approached by the defendants and two other young men armed with wooden baseball bats and sticks. The men encircled the students and asked to see their identification. When Shibusawa attempted to explain that he did not have identification with him that evening, one of the young men struck Shibusawa on the back of his legs with a wooden bat, forcing him to the ground. The assailants ordered the students to lie facedown in a circle and demanded that the students relinquish their money and other valuables. They then searched the students and took a number of items by force. Thereafter, the defendants and the two other attackers began to systematically, repeatedly, and without provocation, strike the students in

---

1. **19–2–305. Petition form and content.** (1) The petition and all subsequent court documents in any proceedings brought under section 19–1–104(1)(a) or (1)(b) shall be entitled "The People of the State of Colorado, in the Interest of ......., a juvenile (or juveniles) and Concerning ........, Respondent.". The petition shall be verified, and the statements in the petition may be made upon information and belief.

     (2) The petition shall set forth plainly the facts which bring the juvenile within the court's jurisdiction. If the petition alleges that the juvenile is delinquent, it shall cite the law or municipal or county ordinance which the juvenile is alleged to have violated. The petition shall also state the name, age, and residence of the juvenile and the names and residences of his parents, guardian, or other legal custodian or of his nearest known relative if no parent, guardian, or other legal custodian is known.

2. § 18–4–501, 8B C.R.S. (1986).

3. § 18–4–502, 8B C.R.S. (1986).

4. § 18–4–302, 8B C.R.S. (1986).

5. § 18–2–101, 18–4–302, 8B C.R.S. (1986).

6. § 18–3–203, 8B C.R.S. (1986).

7. § 18–9–121, 8B C.R.S. (1990 Supp.).

8. § 18–2–101, 18–3–102, 8B C.R.S. (1986).

9. A transfer hearing is held by the juvenile court when a petition is filed alleging that a juvenile fourteen years of age or older is a "juvenile delinquent by virtue of having committed a delinquent act which constitutes a felony." § 19–2–806(1)(a), 8B C.R.S. (1990 Supp.). The juvenile court must then determine whether it would be contrary to the best interests of the juvenile or the public for the juvenile court to retain jurisdiction over the juvenile. *Id.* In making this determination, the juvenile court is guided by a number of considerations set forth in the statute. *See* § 19–2–806(2)–(7), 8B C.R.S. (1990 Supp.).

the head with the wooden bats and sticks. The strikes were made with considerable force and were described as "home-run swings" or "golf swings."

Detective Joel Humphrey testified that one of the participants admitted that the assailants "wound up and put all their weight into the blows before striking the students," and that they were hitting the students "much, much too hard." According to Humphrey, a physician informed him that injuries inflicted to the head with a weapon such as a baseball bat or wooden stick concentrates all of the impact over a very small area, thereby increasing the risk of a depressed skull fracture or a subdural hemorrhage.

The students each testified that they were struck three to five times about the head and body during the attack and that, during the attack, they were fearful that the assailants might seriously injure or kill them. The attack ended when one of the students broke free and ran away from the armed men. The resulting confusion allowed the other students to escape.

At the conclusion of the evidence, the juvenile court found that probable cause existed with respect to all of the charges, except the counts alleging attempted first degree murder. The juvenile court found no evidence to support the charges of attempted first degree murder, but found *sua sponte* that probable cause existed "as to the lesser included offenses of attempt to commit the crime of manslaughter." The juvenile court based its finding on the holding in *People v. Thomas*, 729 P.2d 972 (Colo.1986) (attempt requires that the accused have the intent to commit the underlying offense). In response to the prosecution's motion to reconsider the finding, the juvenile court stated that it could find "vir-

tually no evidence of any deliberation in terms of seeking the death of another human being and that's why the court found no probable cause as to the attempt to commit first degree murder." The juvenile court waived its jurisdiction and transferred defendant Close to the district court.[10]

## II.

The issue presented in this case is whether the juvenile court abused its discretion during the transfer hearing by finding *sua sponte* that there was probable cause to support the lesser-included offense of attempt to commit manslaughter rather than attempt to commit first degree murder as charged by the People.

■ Transfer proceedings for juvenile-delinquency cases are governed by section 19-2-806, 8B C.R.S. (1990 Supp.). This section creates a two-step process to be used by the juvenile court at the transfer hearing. In the first step, the juvenile court must determine "[w]hether there is probable cause to believe that the juvenile has committed a delinquent act for which waiver of juvenile court jurisdiction over the juvenile and transfer to the district court may be sought." § 19-2-806(2)(a), 8B C.R.S. (1990 Supp.).[11] In the second step, the juvenile court must determine whether it would be contrary to the best interests of the juvenile or of the public to retain juvenile court jurisdiction. § 19-2-806(1)(a), (2)(b), & (3)(b), 8B C.R.S. (1990 Supp.).[12] The probable-cause phase of a transfer hearing is equivalent to a preliminary hearing since "the defendant has in substance received what is the sole purpose of a preliminary hearing: a judicial determination of whether probable cause exists to believe that he committed the offenses with which he is charged." *People v. Flanigan*, 189

---

10. The juvenile court retained jurisdiction over D.N., who will be tried as a juvenile.

11. A preliminary hearing to determine whether there is probable cause to believe that the juvenile committed a delinquent act is provided for in § 19-2-404, 8B C.R.S. (1990 Supp.). Preliminary hearings under § 19-2-404 are applicable to juvenile proceedings in which the juvenile court retains jurisdiction over the juvenile, whereas the probable-cause portion of a trans-

fer hearing involves a determination of whether the juvenile court should waive its jurisdiction and transfer the juvenile to district court. Accordingly, § 19-2-404 is not applicable to this case.

12. There is no dispute that the juvenile court should waive its original jurisdiction and allow the defendant to be tried as an adult.

Colo. 43, 44, 536 P.2d 41, 42 (1975). Thus, the case law on preliminary hearings applies to the probable-cause phase of transfer hearings.

▮ A preliminary hearing serves a limited purpose and is not intended to be a mini-trial. *See, e.g., People in the Interest of M.V.,* 742 P.2d 326, 328 (Colo.1987); *Maestas v. District Court,* 189 Colo. 443, 446, 541 P.2d 889, 891 (1975); *Hunter v. District Court,* 190 Colo. 48, 51, 543 P.2d 1265, 1267 (1975). The preliminary hearing is a screening device used to determine whether probable cause exists to support charges that an accused person committed a particular crime. *See, e.g., People v. District Court,* 803 P.2d 193, 196 (Colo. 1990); *People v. District Court,* 779 P.2d 385, 388 (Colo.1989); *People v. Fisher,* 759 P.2d 33, 36 (Colo.1988); *In the Interest of M.V.,* 742 P.2d at 328.

▮ To meet the standard of probable cause, the prosecution need only present evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime. *See, e.g., People v. District Court,* 803 P.2d at 196; *Fisher,* 759 P.2d at 36; *People v. District Court,* 779 P.2d at 388; *In the Interest of M.V.,* 742 P.2d at 329. The prosecution at a preliminary hearing is not required to produce evidence that is sufficient to support a defendant's conviction. *In the Interest of M.V.,* 742 P.2d at 329; *People v. Stewart,* 739 P.2d 854, 855 (Colo.1987). Therefore, it is unnecessary for the prosecution to show beyond a reasonable doubt that the defendant committed the crime, or even the probability of the defendant's conviction. *People v. District Court,* 803 P.2d at 196; *In the Interest of M.V.,* 742 P.2d at 329.

▮ The prosecution is accorded latitude at the preliminary hearing to establish probable cause that the defendant committed the crime as charged. *See, e.g., People v. District Court,* 803 P.2d at 196; *see also People v. Jensen,* 765 P.2d 1028, 1030 (Colo.1988). "The trial court is therefore obligated at the preliminary hearing to view the evidence presented in the light most favorable to the prosecution." *Peo-*

*ple v. District Court,* 803 P.2d at 196; *People v. District Court,* 779 P.2d at 388. "[I]t is not for the trial judge at a preliminary hearing to accept the defendant's version of the facts over the legitimate inferences which can be drawn from the People's evidence." *People v. Holder,* 658 P.2d 870, 872 (Colo.1983). Judging the merits of the case is reserved for the trier of facts at trial. *See, e.g., People v. District Court,* 803 P.2d at 196; *Holder,* 658 P.2d at 872.

First degree murder is a specific-intent crime. A person commits first degree murder if, "[a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person." § 18–3–102(1)(a), 8B C.R.S. (1986). "A person acts 'intentionally' or 'with intent' when his conscious objective is to cause the specific result proscribed by the statute defining the offense. It is immaterial to the issue of specific intent whether or not the result actually occurred." § 18–1–501(5), 8B C.R.S. (1986). The term "after deliberation" means "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." § 18–3–101(3), 8B C.R.S. (1986).

The inchoate offense of criminal attempt is defined in section 18–2–101(1), 8B C.R.S. (1986), as follows:

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

The question before us in this case is whether the evidence, when viewed in the light most favorable to the prosecution, is sufficient to induce a person of ordinary

prudence and caution to a reasonable belief that the defendant engaged in conduct which constituted a substantial step toward the underlying offense of first degree murder.

■ In *People v. Frysig,* 628 P.2d 1004 (Colo.1981), this court reviewed the criminal-attempt statute with regard to a charge of first degree sexual assault and held that the intent to commit the underlying offense is an essential element of attempt. We stated:

> [I]n order to be guilty of criminal attempt, the actor must act with the kind of culpability otherwise required for commission of the underlying offense and must engage in the conduct which constitutes the substantial step with the further intent to perform acts which, if completed, would constitute the underlying offense.

*Id.* at 1010.[13] To commit the underlying offense of first degree murder, it is necessary that the defendant intended to cause the death of another person and that the defendant acted after deliberation. *See People v. District Court,* 779 P.2d at 388. Deliberation is difficult to prove other than through circumstantial or indirect evidence. *Id.; People v. Madson,* 638 P.2d 18, 26 (Colo.1981). This evidence may include "the use of a deadly weapon, the manner in which it was used, and the existence of hostility or jealousy between the accused and the victim." *People v. District Court,* 779 P.2d at 388. "[W]hile deliberation requires that a design to kill precede the killing, the length of time required for deliberation need not be long. What is required for the element of deliberation is that the decision to kill be made after the exercise of reflection and judgment concerning the act." *People v. Bartowsheski,* 661 P.2d 235, 242 (Colo.1983) (citations omitted). Intent, like deliberation, can be proven through means other than direct evidence. "The fact finder may infer an intent to cause the natural and probable consequences of unlawful voluntary acts."

*People v. District Court,* 779 P.2d at 388. Therefore, the fact finder may examine the circumstances surrounding the attack and make the reasonable inference that the defendant "had adequate time for the exercise of reflection and judgment concerning the fatal act, and intended its outcome." *Id.*

■ The testimony presented to the court at the transfer hearing established that the defendants and two others entered the park armed with wooden bats and sticks, surrounded a group of students, forced them to lie facedown in a circle, and then forcibly removed the students' valuables. The assailants then systematically struck the students in the head with powerful, carefully measured blows described as "golf swings" or "home-run swings." The blows were specifically aimed at the students' heads, not other parts of their bodies. The beatings stopped only because one of the students broke free and created a distraction. The evidence also established that the attacks were motivated by the assailants' racial hostility toward people of Japanese heritage.

Viewing the evidence in the light most favorable to the prosecution, these facts support a reasonable belief that the defendants engaged in conduct which constituted a substantial step toward attempted first degree murder of the students. The evidence presented at the transfer hearing established probable cause to believe that the defendants committed the crime of attempted murder in the first degree. The rule is made absolute, and the case is remanded to the juvenile court with directions to reinstate the charges of attempted first degree murder against the defendants.

---

**13.** *People v. Krovarz,* 697 P.2d 378 (Colo.1985), does not apply since the criminal attempt charged in this case is a specific-intent crime.